## SEARCH WARRANTS UNDER THE CRABBE ACT.

### Municipal Court of Cincinnati.

### CITY OF CINCINNATI v. CHARLES BUSH, FRED. KIPP and HENRY CRONE.

### Decided, April, 1922.

*Search Warrants—Description of the Premises to be Searched— Omission of Name of the Owner or Occupant—What may be Seized —Authority of Deputy Municipal Court Clerk to Issue Warrant.*

1. A search warrant need only describe the place to be searched with sufficient particularity to enable the officers executing the warrant to find the place without difficulty; and a description of a place by street and house number is sufficient.

2. The owner or occupant of the house need not be set out in the search warrant.

3. The allegation in the affidavit upon which the search warrant is premised, that a certain person is violating the law on the premises, does not bind the officers executing the warrant to arrest only the person alleged in the affidavit to be violating the law on the premises, if others are found violating the law.

4. In executing a search warrant for intoxicating liquor unlawfully possessed and concealed, the police officers found defendants manufacturing intoxicating liquor unlawfully, and arrested them and seized the evidence of their guilt, which was a still. This seizure, which was incidental to the execution of a valid search warrant, was legal, and the property will not be returned, and may be offered in evidence.

5. A determination of what is probable cause preliminary to the issuance of a search warrant, or warrant for the arrest of a person, is a ministerial act.

6. The clerk of the municipal court of Cincinnati and his deputies are authorized, under the General Code of Ohio and the Constitution, to issue search warrants.

*Saul Zielonka,* City Solicitor and *Chauncey D. Pichel,* Municipal Court Prosecutor, for the City of Cincinnati.

*A. C. Fricke* and *Harry H. Shafer,* for the defendants.

EYRICH, J.

Motion for the return of contraband articles seized upon search warrant by a deputy clerk of this court.

Before trial the defendants, through their counsel, filed a motion to have the court direct the chief of police and the prosecuting attorney of this court to not offer in evidence certain intoxicating liquors, the property used and intended for use for the unlawful manufacture of intoxicating liquor.

1. It is urged by counsel for the defendant that as the affidavit alleges that Fred. Bush was violating the law at the premises searched the officers were limited in their search to premises owned or occupied by Fred. Bush.

2. That the search warrant called only for the seizure of intoxicating liquors, and a still also was seized.

3. That the search warrant is invalid because it was issued by a deputy clerk of this court, and that the deputy clerk was unable to determine probable cause for the issuance of such warrant, it being contended that it was a judicial act.

The affidavit upon which the search warrant was predicated was to the effect that a detective, Joe C. Weis had good cause to believe that "one Fred. Bush at a place other than his or her *bona fide* dwelling or residence, as such is defined by the laws enacted to enforce prohibition of intoxicating liquor in Ohio, to wit: in cellar and on the first and second floors on the premises known as 2121 Storrs street, in the city of Cincinnati, county of Hamilton, and state of Ohio, does unlawfully conceal and possess intoxicating liquor" * * *.

The deputy clerk of this court, upon such affidavit, issued a search warrant, as follows:

THE MUNICIPAL COURT OF CINCINNATI.

"SEARCH WARRANT.

STATE OF OHIO, HAMILTON COUNTY, CITY OF CINCINNATI, ss.

To any Police Officer of the City of Cincinnati; or to the Inspectors or Deputies Appointed by the Commissioner of Prohibition of the State of Ohio, Greeting:

WHEREAS, complaint on oath in writing supported by an affidavit, has this day been made before me, a Deputy Clerk of the Municipal Court of Cincinnati, which affidavit is hereto annexed, being the affidavit appearing above and made part hereof; and I am satisfied and do find that there is probable cause to believe that the grounds set forth in said application and affidavit exists, and that the laws of the State of Ohio are being violated as charged.

*These are, Therefore,* to command you, in the name of the State of Ohio, with the necessary and proper assistance, to enter, in the day time or in the night time, into certain premises on the cellar and first and second floors of the premises known as 2121 Storrs street, in the City of Cincinnati, County of Hamilton and State of Ohio, and within the jurisdiction of this court, and there diligently search for the intoxicating liquors alleged in the affidavit hereto annexed, to be illegally there concealed and possessed, and that you bring the same, or any part thereof, and the containers thereof, found on such search, forthwith, before a Judge of the Municipal Court of Cincinnati having cognizance thereof, to be disposed of and dealt with according to law."

The evidence offered shows that when the officers went to the house described in the search warrant, No. 2121 Storrs street, in Cincinnati, they found the three defendants engaged in the unlawful manufacture of intoxicating liquor.

The place to be searched is not described as the house of any one in the warrant, but definitely described as No. 2121 Storrs street, under which description the officers testified they had no trouble in locating the premises to be searched. The Constitution provides, Article I, Section 14, of the Bill of Rights of the Constitution of Ohio, that:

"The right of the people to be secure in their persons, houses, papers and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

Here the place was most particularly described as a certain premises on a certain street, with the number given. Any one

could find the house under such description. This, therefore, meets the requirement of the Constitution and of the statute (General Code, Section 13483). It is true that the search warrant did not call for the arrest of any one or for the seizure of any person, but the Supreme Court of this state has held that such is not necessary.

In *Eichenlaub* v. *State,* 36 Ohio State, 140, at page 143, the Supreme Court says:

"Obviously the provision in Article 1, Section 14. is not to be confined to cases literally within its terms. So applied it might prohibit a search warrant in a case where stolen property has been secreted, but no particular person is suspected of the theft. As Scott, C. J., says in *Walker* v. *Cincinnati,* 21 Ohio St., 53, speaking of the proper construction of the constitution: 'Of course, I do not mean that we are bound to adhere strictly to the letter, without regard to the evident meaning and spirit of the instrument. The fundamental law of the State is to be construed in no such narrow and illiberal spirit. On the contrary, it is to be construed according to its intention, where that is clear; and that which clearly falls within the reason of the prohibition may be regarded as embodied within it.'"

In addition to this, it will be noted that in the Fourth Amendment to the Constitution of the United States, words "place to be searched, and person or things to be seized," and in the State Bill of Rights, the words, "place to be searched and the person and things to be seized" are used, reflecting on the point that it was never intended by the framers of the Constitution that all three were requisites for a search warrant.

Counsel for defendants contended that the entire search was illegal, as the affidavit upon which the search warrant was predicated described the premises as those of Fred Bush. A reading of the affidavit and search warrant do not disclose this feature, for in the affidavit, it very plainly says that Fred Bush was violating the law at a place other than his or her *bona fide* private dwelling or residence, and in the search warrant no reference is made, whatsoever, as to whose home or

house or residence it is, but the deputy clerk instructed the state officers to merely search No. 2121 Storrs street.

This court, therefore, is of the opinion that the search of the premises described in the search warrant was legal.

The next question that arises is as to the seizure of the articles not called for in the search warrant. These articles made up what is commonly known as a still which is used for the distillation of whiskey. The finding of this still was incidental to the search for intoxicating liquor, and the containers thereof. The officers were lawfully on the premises by virtue of the process of this court. If the premises were searched, and it had not been that they were a place for the possession and concealment of new crude whiskey, which had not been manufactured under Government permit, and of a still, it would have been a *bona fide* private residence, and both under the Crabbe act and the ordinances of the city of Cincinnati, possession of intoxicating liquor in *bona fide* private dwellings, would not have been unlawful. It is incumbent, therefore, upon the officers to seize all the evidences of guilt of the accused, and part of the proof under a charge of unlawfully possessing liquor is that the accused did not possess or conceal it in his *bona fide* private dwelling. In this case the defendants were caught in the very room with the still, and engaged in operating it.

In the third and fourth paragraphs of Section 7 of Senate Bill No. 17, passed February 2, 1921, by the Legislature of Ohio, the following language is used:

"In the performance of the duties imposed upon them by law, the commissioner, deputy and inspectors, may at all reasonable hours enter into, or upon all the buildings, places or things or parts thereof as are used exclusively for *bona fide* private residence purposes; and no place shall be regarded as a *bona fide* private residence under the laws prohibiting the liquor traffic wherein liquors are possessed which have been illegally manufactured or obtained.

"Provided that nothing in this act shall be construed to permit any person to enter or search, with or without a warrant, a *bona fide* private residence as herein defined; nor shall

a search warrant issue to search any other premises not a *bona fide* private residence, except in accordance with the provisions of law, as found in Sections 13482 to 13488, inclusive, of the General Code, so far as same may apply.''

It was therefore important for the officers to seize all evidence of guilt and the seizure of the still came within such definition, in view of the sections of the General Code just quoted.

When lawfully on the premises the officers had the right, when seeing a misdemeanor being committed, to arrest without warrant and to seize the evidence of guilt, which in this case was the paraphernalia used in the unlawful manufacture of intoxicating liquor.

Section 13492 of the General Code reads as follows:

''A sheriff, deputy sheriff, constable, marshal, deputy marshal, watchman or police officer, shall arrest and detain a person found violating a law of this state, or an ordinance of a city or village, until a warrant can be obtained;''
and Section 8 of an act passed February 2, 1921, commonly known as the Miller bill, reads as follows:

''Said commissioner, deputy and inspectors may arrest without a warrant any person found by them violating the laws relating to the liquor traffic, and take such person before any justice of the peace or other officer, or tribunal having jurisdiction in such proceeding, and take such other action as the law provides;''

and Section 4 of the same act, first paragraph, reads—

''It shall be the duty of the commissioner, deputy and inspectors diligently to enforce laws of the state having to do with the prohibition of the liquor traffic, and exercise all powers herein conferred, provided, however, that nothing in this act contained shall in any manner relieve any local township, municipal, county or other state officer from responsibility for the enforcement of such laws.''

This holding uniformly conforms to the decisions of our courts, both state and federal.

In the case of *Mortimer M. Dunning* v. *City of Cincinnati*, 21 Nisi Prius, (N. S.), 468, affirmed by the court of appeals of Hamilton county, and the supreme court of Ohio, Judge Thomas H. Darby, in affirming a judgment of conviction of the municipal court of Cincinnati, held that it was not a violation of the constitutional rights of Dunning, for the detective, after finding Dunning in his barber-shop with a gambling slip in his possession, to seize such gambling slip from his pocket when he had endeavored to conceal it.

In *Weeks* v. *United States*, 323 U. S., 383, at pages 392 and 393, the court says:

"It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases * * *. Nor is it the case of burglars' tools or other proofs of guilt found upon his arrest within the control of the accused;"

and in *Dillon* v. *O'Brien et al*, 16 Cox C. C., 245, the syllabus says in part:

"When a person is arrested for committing a felony or misdemeanor, any property in his possession believed to have been used by him for the purpose of committing the offense may be seized and detained as evidence in support of the charge; and if necessary, such property may be taken from him by force, provided no unnecessary violence is used."

In the case of *J. Morgan Smith* v. *William Travers Jerome*, 47 Misc. Rep., 22; 93 N. Y. Supp., 202, Judge Gaynor, a former mayor of New York, who in his many decisions held the police strictly accountable for their acts, in passing upon an application for an injunction directed to the district attorney to deliver over certain letters which had been seized at the time of the arrest of J. Morgan Smith, in Cincinnati, said:

"The police have the power, and it is also their duty, to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to

which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial" * * *.

In *United States* v. *Murphy,* 264 Fed. Rep., 842, the United States District Court, Eastern District of New York, the court did not hold unlawful the search of a man after his arrest for drunkenness, and the finding upon him of five one-ounce flasks of whiskey. Citing the Weeks case, the court went on to say:

"The Weeks case refers also to burglars' tools or other proofs of guilt found upon defendant's arrest within the control of the accused, as not exempt from seizure. In the case at bar the evidence seized is in the same class as burglars' tools, and although the evidence is for use in a prosecution upon a charge other than that upon which the defendant was arrested, there seems to be no reason for permitting its use in the one case and disallowing it in the other."

. It is next urged that the search warrant upon which search was had in this case was invalid, as it had been issued by the deputy clerk of this court. The court's attention was drawn by the defendants to the decision of *Veal* v. *State of Ohio,* 32 O. C. A., in which the court holds that the clerk of the municipal court of Akron had no authority, under the Crabbe act, to issue search warrants. This holding, however, is not binding upon this court, as it is *obiter dictum,* and is plainly described as such by the appelate court. In addition, it is our belief that upon a closer reading of certain provisions of the Crabbe act it will be found that they do not limit the issuance of search warrants to certain named officers.

Section 6212-18, as it is found amended at 109 Ohio Laws, 144, does say that—

"The officers named herein (any justice-of-the-peace, mayor, municipal or police judge within the county) shall have authority to issue search warrants as provided for in Section 6212-16 of the General Code" * * *.

It is true that here is a specific grant of authority, but no limitation whatsoever on the authority of the clerk of the municipal court, granted in another enactment, to issue search warrants.  In the act commonly known as the Miller bill, Section 7, fourth paragraph, we read:

"Nor shall a search warrant issue to search any other premises not a *bona fide* residence, except in accordance with the provisions of law, as found in Sections 13482 to 13488, inclusive, of the General Code so far as same may apply."

The court notes that in the last sentence there is no comma—the words being "so far as same may apply,"  This disagrees with the *obiter* of the appellate court, in that designated individuals being named to issue search warrants limits the power of the clerk of the municipal court, who, under other provisions of law, is authorized to issue this form of process. The Crabbe act does simply give authority to certain persons to issue this form of process.

Under Sections 4593 and 4594, General Code, the clerk and deputy clerk of the police court had specific authority to issue search warrants, and by virtue of Section 1558-30, General Code, the clerk and deputy clerks of the municipal court of Cincinnati succeed to all their powers, and in addition, are authorized as follows:

"He shall have power to issue and sign all writs, process and papers issuing out of the court, and to attach the seal of the court thereto."

It is urged by counsel for the defendant that determining probable cause is a judicial act, and can not be exercised by a clerk of a court.  The appellate court in the Veal decision indicates that it is of the opinion that it is a judicial act, but in this we do not concur.  Such acts are purely ministerial. *Moliter* v. *State of Ohio*, 20 Weekly Law Bulletin, 323; affirmed with opinion, 6 C. C. Rep., 263; affirmed without opinion, Supreme Court of Ohio, 29 Weekly Law Bulletin, 152.

Many decades before sumptuary legislation, such as prohibi-

tion laws, were even thought of by legislators, police court clerks were authorized to issue warrants for the search of places and the arrest of persons. The Constitution, Article 1, Section 14, guarantees the citizen against invasion of his home or abridgment of his personal liberty, in that warrants alone may issue upon probable cause. The clerk of the municipal court and his predecessors in office have issued warrants for the arrest and detention of persons, and his right has been unchallenged except in the Moliter case.

Can it be said that if a clerk can determine what is probable cause and cast a man into prison, that he can not determine what is probable cause for the issuance of a warrant to search a place?

For reasons stated, the motion for the return of the contraband articles seized is overruled.